UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WENDY J. WILLIAMS, ET AL | CIVIL ACTION |
| VERSUS | No. 19-1218 |
| HUNTINGTON INGALLS INDUSTRIES, ET AL | SECTION: "J"(3) |

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 216)** filed by Third-Party Defendant, Bayer CropScience, Inc. f/k/a Amchem Products, Inc. f/k/a Benjamin Foster Co. ("Amchem"). The motion is opposed by Third-Party Plaintiff, Huntington Ingalls, Inc. ("Avondale") (Rec. Doc. 230). Having considered the motion and legal memoranda, the record, and applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This wrongful death action is brought by the heirs of Celestine Williams, who died of mesothelioma caused by exposure to asbestos. Mrs. Williams' husband, Lawrence Williams, allegedly exposed her by wearing clothing covered in asbestos fibers from his work as a laborer and welder at Avondale.

Avondale asserted a Third-Party Demand against Amchem, claiming entitlement to virile share contributions depending on the outcome of Plaintiffs'

1

lawsuit. Subsequently, Defendant, Albert J. Bossier, Jr. (deceased), filed a cross-claim against Amchem claiming the same.

Now, Amchem moves for summary judgment on both Avondale's and Mr. Bossier's claims.

## PARTIES' ARGUMENTS

Here, Amchem does not dispute that their asbestos-containing product, 81-27, was present at Avondale. However, Amchem maintains that Plaintiffs provide nothing more than speculations that Mr. Williams was exposed to Amchem's product. Further, Amchem contends Avondale cannot establish medical causation. Specifically, they cannot prove exposure to an Amchem product was a substantial contributing factor of Mrs. Williams's mesothelioma.

However, Avondale argues that Amchem cannot succeed on summary judgment, because there are genuine disputes of material facts. Fact witness, Mr. Williams's co-worker Claude Pierre, testified that Mr. Williams cleaned up a glue-like substance applied to insulators while working ("Mr. Pierre's testimony"). *See* (Rec. Doc. 230-2, at 17-18, 90-91). This glue-like substance came pre-mixed in a five-gallon tub, which matches the description of Amchem's product, Benjamin Foster 81-27 ("81-27 adhesive"). *See id.* at 86-91. When Mr. Williams scraped the glue-like substance off of surfaces like his shoes, it created dust visible in the air. *See id.* Another fact witness, an Avondale insulator and foreman Luther dempster, testified that Amchem's products were used on "just about everything that was built at

2

Avondale." (Rec. Doc. 230-3, at 66-67). They contend that this is sufficient evidence to withstand summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not

3

persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

The main issue presented is whether Mr. Williams was exposed to Amchem's asbestos-containing product. Amchem does not dispute that their product was present at Avondale nor that Mr. Williams was exposed to asbestos. Rather, Amchem argues that there is no evidence that their specific product was the asbestos-containing product Mr. Williams was exposed to.

In an asbestos case under Louisiana law, a plaintiff must show (1) significant exposure to an asbestos-containing product and (2) the exposure was a substantial cause of the injury. *Rando v. Anco Insulations, Inc.*, 2008-1163, p. 35 (La. 9/4/09), 16 So. 3d 1065, 1091; *see Bourke v. Exxon Mobil Corp.*, 2016 U.S. Dist. LEXIS 27762, at *19 (E.D. La. Mar. 4, 2016).

First, "'[s]ignificant exposure may be shown by demonstrating that the plaintiff actively worked with asbestos-containing materials." *Broussard v. Huntington Ingalls, Inc.*, 2021 U.S. Dist. LEXIS 225375, at *6 (E.D. La. Nov. 22, 2021); *Abadie v. Metro Life Ins. Co.*, 784 So. 2d 46, 93 (La. App. 5 Cir. 3/28/2001). Evidence proving exposure may be direct or circumstantial. *Williams v. Taylor Seidenbach, Inc.*, 849 Fed. Appx. 440, 444 (5th Cir. 2021). Although circumstantial evidence must provide a reasonable amount of certainty, it need not disprove all other possible causes. *Id.* at 445. Further, the plaintiff need not identify the product by name, but rather, can simply show they were likely in proximity to the product. *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 172 (5th Cir. 1991) ("[T]estimony by insulators . . . that they use defendants' product 'more frequently than any other' and that defendants' product was used 'throughout the plant' sufficiently supported a finding of exposure to defendants' product."); *see also Whatley v. Armstrong World Industries*, 861 F.2d 837 (5th Cir. 1988). Evidence is sufficient "'if defendants' products are likely to be present at a specific location within the workplace,' because 'plaintiffs are likely to have been exposed to the products if they worked near those specific locations, even without explicit testimony that the plaintiff worked near the product.'" *Williams*, 849 Fed. Appx. at 444 (quoting *Slaughter*, 949 F.2d at 172).

Amchem compares the present case to *Lucas v. Hopeman Bros., Inc.*, arguing that Plaintiffs have no evidence showing Mr. Williams was exposed to their product. In *Lucas*, plaintiff developed mesothelioma after being allegedly exposed to asbestos-containing wallboard at the Avondale shipyards. 2010-1037, p. 25 (La. App. 4 Cir.

5

2/16/11) 60 So. 3d 690, 699. Although Westinghouse admitted that they supplied Avondale with wallboard, Westinghouse argued that their wallboard was only one of multiple types used, and there was no evidence that plaintiff was in fact exposed to their specific wallboard. *Id.* Moreover, plaintiff acknowledged that there were different wallboards manufactured by multiple makers at the Avondale shipyards. *Id.* The Court agreed and held:

> [w]hile the plaintiffs have established that the decedent was more probably than not exposed to asbestos-containing wallboard . . . we find the plaintiffs have failed to set forth sufficient proof that it was more probable than not that the wallboard to which the decedent was actually exposed was Micarta wallboard supplied by Westinghouse/CBS.

*Id.* at 700-01. The Court concluded that summary judgment was appropriate, because the mere possibility of exposure was not enough to support a judgment in the plaintiffs' favor. *Id.* at 701 (citing *Vodanovich v. A.P. Green Indus., Inc.*, 03-1079, p. 5 (La. App. 4 Cir. 3/3/04), 869 So. 2d 930, 934)).

More recently, in *Krutz v. Huntington Ingalls, Inc.*, this Court granted Amchem's motion for summary judgment, because there was "no evidence" that plaintiff was exposed to any of Amchem's products, let alone the products that contained asbestos. 2021 U.S. Dist. LEXIS 185237, at *8 (E.D. La. Sep. 28, 2021). The plaintiff was deposed three times and "never testified that he worked with Amchem's products, or even the sort of wet products that Amchem manufactured. Specifically, he testified that he did not remember seeing the insulators use any type of glue or mastic product around the insulation piping." *Id.* Because plaintiff provided no

6

evidence of exposure to that specific product, there was no issue of material fact and summary judgment was granted. *Id.* at *9.

In *Lucas* and *Krutz*, the plaintiffs provided no evidence that the manufacturer's specific product was used. The present matter is distinguishable from both cases, because Plaintiffs here provide specific, material facts that create a genuine dispute as to whether Mr. Williams was exposed to Amchem's 81-27 adhesive. Unlike the plaintiff in *Lucas*, Avondale does not say that multiple, indiscriminate types of fibrous adhesive were used at the shipyards. Rather, Avondale submits Mr. Pierre's testimony that Mr. Williams worked near a glue-like substance that came pre-mixed in a five-gallon tub. (Rec. Doc. 230-2, at 86-91). Indeed, Amchem's 81-27 adhesive also was a pre-mixed glue-like substance that came in a five-gallon tub. (Rec. Doc. 216-1, at 2); (Rec. Doc. 230-4, at 10). Further, unlike the plaintiff in *Krutz* who testified that he never worked near any type of wet product nor ever saw a glue-like substance at on the insulation, Mr. Pierre's testimony demonstrates that Mr. Williams did work near the adhesive used at Avondale. *See* (Rec. Doc. 230-2, at 86-91).

This case is more akin to *Slaughter v. Southern Talc Co.* In *Slaughter*, the plaintiffs did not identify defendant's product by name, but the Fifth Circuit Court of Appeals held that circumstantial evidence of proximity to the asbestos-containing product was enough to withstand summary judgment. 949 F.2d at 171. Plaintiffs provided three main pieces of evidence, which combined were sufficient proof: (1) defendants' products were actually delivered to the location, (2) the products were used all over the plant, and (3) the plaintiff worked near where the products would

7

have been installed. *See id.* The Court explained that it was common sense that plaintiffs were likely exposed to the defendant's product, if the product was likely present at the specific workplace location, even without explicit testimony or direct evidence. *See id.* at 172.

Here, like in *Slaughter*, the evidence may not identify Amchem's 81-27 adhesive by name, but there is sufficient circumstantial evidence of proximity to the product to withstand summary judgment. First, Amchem acknowledges that their products were present at the Avondale Shipyards. (Rec. Doc. 250, at 7). Second, Amchem's products were used on "just about everything that was built at Avondale." (Rec. Doc. 230-3, at 66-67). Third, Mr. Williams cleaning work in the engine and boiler rooms put him near insulation work, where the adhesive would have been used. (Rec. Doc. 230-1, 17-18, 90-91). The evidence that Amchem's 81-27 adhesive was used ubiquitously across Avondale, combined with Mr. Pierre's testimony, renders a genuine dispute of material fact whether Mr. Williams was exposed to Amchem's products such that summary judgment is inappropriate.

Second, a plaintiff must show that the exposure was a substantial factor in the injury. *Rando*, 16 So. 3d at 1091. Louisiana courts have repeatedly recognized the causal connection between asbestos exposure and mesothelioma. *Broussard*, 2021 U.S. LEXIS 225375, at *8. Mesothelioma cases often have multiple possible causes of injury present, so an asbestos exposure is a cause-in-fact if it is a substantial factor. *Rando,* 16 So. 3d at 1088. "Any non-trivial exposure to asbestos

is deemed a substantial factor and a cause of mesothelioma." *Broussard*, 2021 U.S. LEXIS 225375, at *8.

In this case, not only was Mr. Williams in proximity to the adhesive, but also Mr. Pierre testified that the adhesive would stick to things like his shoes. He further testified that Mr. Williams would scrape the substance off, which created visible air particles. Viewing the evidence in the light most favorable to the third-party Plaintiff, this is a non-trivial exposure that more likely than not is a substantial factor of Mrs. Williams's mesothelioma.

In sum, Avondale has shown that there are genuine disputes of material fact and so, Amchem is not entitled to summary judgment.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion for Summary Judgment* **(Rec. Doc. 216)** is **DENIED**.

New Orleans, Louisiana, this 9th day of February, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE